UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Wilbert Glover, | No. 22-cv-1459 (KMM/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Wells Fargo Bank, Karen Lawson, Amber H., Destiny R., Brittany, Ajzhanb, and Maria, | |
| Defendants. | |

The Plaintiff, Wilbert Glover, brought this case *pro se* against Defendants, Wells Fargo Bank and several individuals. Generally speaking, Mr. Glover alleges that the Defendants denied him equal credit opportunities based on his race in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, and other statutes. This matter is now before the Court on the Defendants' motion to dismiss the Complaint. [Doc. 27]. Defendants argue that Mr. Glover has failed to serve the Complaint on any of the individual Defendants, that he has failed to state any claim for relief against the individual Defendants, and that some of his claims should be dismissed as to all Defendants. For the reasons discussed below, the Defendants' motion is granted.

**I.    Background**

Because the Court is addressing a motion to dismiss, the relevant background is drawn from the facts alleged in Mr. Glover's Complaint. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). Mr. Glover is Black, and he has been a

1

Wells Fargo customer since at least 2014. The Complaint lists a series of interactions he had with Wells Fargo personnel over several months, some of which involve allegations of racist statements by Wells Fargo employees, and others that involve conduct Mr. Glover attributes to racial bias.

Mr. Glover applied for Wells Fargo credit cards in August 2019 and July 2020, but both requests were denied. [Doc. 1 ¶ 7] On August 18, 2020, Mr. Glover applied for an auto loan, but because his credit score was 690, his application was denied. [*Id.* ¶ 8]. Because Mr. Glover believed that a person of any race with a credit score over 600 would be approved for an auto loan, he attempted to contact Wells Fargo. However, no one "answer[ed] [be]cause of race[;] a black man asking for a loan." [*Id.*]

On November 27, 2020, Mr. Glover "was denied customer services due to [his] race." [*Id.*] An unidentified "bank teller" called him "a Black boy," "stated you people," and "stated she do not respect Black people and don't believe nothing a Black man say." [*Id.*] Mr. Glover asked to speak to a manager, but the bank teller refused to connect him. [*Id.*]

In January 2021, Mr. Glover complained about not receiving a debit card to customer service. [*Id.* ¶ 9]. When he called, he spoke to the individual Defendant Brittany, but "she refuse[d] to take [his] complaint." [*Id.*] Then, Mr. Glover talked to the individual Defendant Ajzhanb, who like Brittany, is in Wells Fargo's "Enterprise Complaint Management Office." [*Id.*] Mr. Glover asked to speak to a supervisor, but "both of them terminate[d] the call." Instead, he states that he was "denied public service [be]cause [he is a] Black man." [*Id.*]

2

In February 2021, Mr. Glover raised another complaint to Wells Fargo when he received a notification that he would be charged a $15.00 monthly service fee for failure to meet a $1,000.00 minimum balance on his account. [*Id.*] At the time, Mr. Glover's balance was over $2,373.00, and Wells Fargo continued taking out the monthly service fee. [*Id.*] Mr. Glover asserts that this was due to "deliberate indifference base of race." [*Id.*]

Mr. Glover contacted Wells Fargo again in March 2021, but he had another unpleasant experience. [*Id.* ¶ 10]. He spoke to someone named Jack to make a complaint about how Brittany and Ajzhanb had treated him, but Jack refused to help him. Jack "stated all Black people [are] wrong and [he] is not going to make a complaint on [a] coworker for [any] Black person," and then hung up the phone. [*Id.*]

In June 2021, Mr. Glover complained again that he still had not received a debit card. [*Id.*] He spoke to someone identified as "Trina R." and also raised the issue of having been turned down for a credit card. [*Id.*] Mr. Glover asserts that this too was due to racial bias. [*Id.*]

In August 2021, after having been denied a request for a home mortgage loan, Mr. Glover contacted Wells Fargo looking to speak with someone about the denial. [*Id.*] He was told that there was no one there to talk to him. [*Id.*]

On December 13, 2021, Mr. Glover contacted Wells Fargo to make a complaint and spoke to the individual Defendant Amber H. Mr. Glover raised the issue of the refusal to send him a debit card and an experience he had with a teller at the Roseville, Minnesota, branch. [*Id.* ¶ 11]. Mr. Glover asserts that at the Roseville location, "the white lady teller in the drive through refuse[d] to provide customer services" to him, despite the fact that no

3

other customer was in line behind him. [*Id.*] The teller "waved her hand . . . and 'said stated' bye, bye blackie not in this drive through at Roseville branch." [*Id.*] Mr. Glover went inside the Roseville branch and made a complaint about the teller's behavior to the supervisor, but the supervisor did nothing other than refuse to give Mr. Glover her name. [*Id.*]

Later that day, Mr. Glover spoke with the individual Defendant Maria, a teller, to tell her that his debit card did not work. [*Id.* ¶ 11.B]. Maria refused to put the name of a vendor on a money order for Mr. Glover even though he had his driver's license and the non-functioning debit card in hand. [*Id.*]

On January 11, 2022, Mr. Glover alleges that the individual Defendant Karen Lawson, who is alleged to be a Wells Fargo "Executive Office Specialis[t]," "lied and said the debit card [he requested] was returned to them [be]cause the address was incorrect." [*Id.*] Although Mr. Glover intended to lodge a complaint about treatment he had received from Brittany, Jack, and Ajzhand, Ms. Lawson allegedly terminated the call because he is Black. And when Mr. Glover attempted to call back "a number of times, [he] kept getting [the] phone call terminate[d] [be]cause this is [a] complaint against white worker[s] from [a] Black man." [*Id.*]

**II.     Discussion**

Defendants argue: (1) that the Complaint should be dismissed against all the individual defendants under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim for relief against them; (2) that the Complaint also fails to state certain claims

4

against any Defendant; and (3) the individual Defendants should be dismissed because Mr. Glover failed to properly serve them.

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). But the Court need not accept as true any wholly conclusory allegations or legal conclusions that the plaintiff draws from the facts pled. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

Mr. Glover is a *pro se* litigant, meaning that he is a non-lawyer, representing himself in this action. Pleadings filed by *pro se* litigants are given a "liberal construction." *E.g.*, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). This means "that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id.*; *see also Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (same). However, under this rule a court "may neither 'supply additional facts nor . . . construct a legal theory for

5

plaintiff that assumes facts that have not been pleaded." *Dixon v. Clearwire Corp. ex rel Clear Wireless LLC*, Civil No. 11-2558 (JNE/JSM), 2014 WL 468197, at *2 (D. Minn. Feb. 6, 2014) (quoting *Stone*, 364 F.3d at 915)). As a result, even applying the liberal-construction rule to Mr. Glover's Complaint in this case, he must nevertheless allege sufficient facts to state a plausible claim consistent with Rule 8(a), *Iqbal*, and *Twombly*. *See id.*[1]

### B. Analysis

Based on the Court's careful review of the Complaint, the Defendants' motion to dismiss, and the entire record, the Court grants the Defendants' motion. The Court construes Mr. Glover's claims according to the statutory provisions he has cited in his Complaint, and has not identified any alternative cause of action that more appropriately addresses his factual allegations.

---

[1] Defendants argue that because Mr. Glover has filed many cases in this District, the Court should more strictly construe his pleadings. [Defs.' Mem. at 7 n.1 (listing Plaintiff's prior litigation and citing cases where courts have augmented the liberal-construction rule)]; *Sledge v. Kooi*, 564 F.3d 105, 109 (2d Cir. 2009); *Lopez v. Genesis FS Card Servs.*, No. 21-CV-1370 (LTS), 2021 U.S. Dist. LEXIS 77700 (S.D.N.Y. Apr. 21, 2021) (application of the rule "depends upon a variety of factors, including the procedural context and relevant characteristics of the particular litigant"); *Darby v. Redmann*, Case No. 3:09-cv-045, 2010 U.S. Dist. LEXIS 145087, at *8 (D.N.D. Feb. 8, 2010); *see also Turner v. ILG Techs., LLC*, 2022 U.S. Dist. LEXIS 175763, at *41–42 (W.D. Mo. Sept. 28, 2022). The Court need not resolve this issue because, even giving the Complaint the liberal construction ordinarily afforded to *pro se* pleadings, the Court grants Defendants' motion to dismiss for failure to state a claim.

1. **28 U.S.C. § 1331**

First, although Mr. Glover cites 28 U.S.C. § 1331, it does not appear that he does so as the basis of a substantive claim. To the extent he intended to do so, such a claim would fail because section 1331 simply establishes the district courts' federal-question jurisdiction; it does not itself create substantive rights independent of some other cause of action. *See Sabhari v. Reno*, 197 F.3d 938, 943 (8th Cir. 1999) ("Nevertheless, § 1331 does not, in and of itself, create substantive rights in suits brought against the United States."); *One Thousand Friends of Iowa v. Mineta*, 250 F. Supp. 2d 1064, 1073 (S.D. Iowa 2002) (finding that § 1331 does not provide an "independent cause of action" and citing *Sabhari*, 197 F.3d at 943).

2. **Minn. Stat. § 363A.12**

Second, the Court considers Mr. Glover's lone citation to a state law, Minn. Stat. § 363A.12. That statute provides, in relevant part, that it is an "unfair discriminatory practice to discriminate against any person in the access to, admission to, full utilization of or benefit from any public service because of race." *Id.* § 363A.12, subd. 1. A "public service" is defined as "any public facility, department, agency, board or commission owned, operated or managed by or on behalf of the state of Minnesota." *Id.* § 363A.03, subd. 35.

The Complaint does not allege facts that would support a reasonable inference that Wells Fargo or any of the individual Defendants qualifies as a "public service" within the meaning of these state laws. Minn. Stat. § 363A.03, subd. 35; *id.* § 363A.12, subd. 1. As a

7

result, the Complaint fails to state a claim for relief under this state statute, and this claim is dismissed in its entirety.

### 3. 42 U.S.C. § 1988

Third, Mr. Glover's Complaint includes a reference to 42 U.S.C. § 1988, which allows the prevailing party in a civil suit brought under one of several statutory provisions to recover "a reasonable attorney's fee."[2] To the extent Mr. Glover attempts to assert a claim under section 1988, it fails because he is not entitled to recover attorney's fees as a *pro se* litigant. *McDermott v. Royal*, 123 F. App'x 241, 242 n.3 (8th Cir. 2004) (per curiam) ("We note that a *pro se* litigant is not entitled to attorney fees under section 1988."). Accordingly, any claim under section 1988 fails as a matter of law and is dismissed in its entirety.

### 4. The Remaining Claims

The remaining statutory references in the Complaint prohibit certain forms of racial discrimination: 42 U.S.C. § 1981; 42 U.S.C. § 1982; and 15 U.S.C. § 1691. Defendants argue that the Complaint fails to state a claim against any of the individual Defendants under these statutes, and the Court agrees.[3] Because all claims against the individual Defendants are dismissed in this order for failure to state a claim, the Court does not address

---

[2] Though the handwritten Complaint references "12 U.S.C. § 1988," no such provision exists. Given the context of Mr. Glover's other claims, the Court construes the Complaint as seeking recovery of attorney's fees pursuant to 42 U.S.C. § 1988.

[3] In their motion to dismiss, Defendants do not argue that the section 1981, section 1982, or section 1691 claims should be dismissed with respect to Wells Fargo. Accordingly, the Court does not consider whether the Complaint adequately states a claim against Wells Fargo under any of those statutes.

Defendants' alternative argument that the individuals should be dismissed because they have not been properly served with the Summons and Complaint.

### *Section 1981 and 1982 – Contracts and Property Rights*

"Sections 1981 and 1982 protect citizens' rights to make and enforce contracts and purchase both personal and real property without any impairment due to private or public racial discrimination." *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004). The flaw in the Complaint with respect to these claims is that the facts alleged do not plausibly suggest that the individual Defendants themselves engaged in racial discrimination.

Section 1981 addresses racial discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981(a); *see Withers v. Dick's Sporting Goods, Inc.*, 636 F.3d 958, 962 (8th Cir. 2011) (citing § 1981(a)). The protection against discrimination in making and enforcing contracts includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Plaintiffs asserting a § 1981 claim must allege facts demonstrating the following elements: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by defendant." *Hoosman v. 1st Class Sec., Inc.*, 2013 WL 5890680, at *4 (N.D. Iowa Nov. 4, 2013) (quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009)). Further, to state a claim under § 1981 a plaintiff must "initially plead . . . that, but for race, [he or she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S.

Ct. 1009, 1019 (2020); *Johnson v. Schulte Hosp. Grp., Inc.*, Civil No. 21-457 ADM/TNL, 2022 WL 597510, at *9 (D. Minn. Feb. 28, 2022).

Section 1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." "The elements of a § 1982 claim are (1) membership in a protected class; (2) discriminatory intent on the part of the defendant; and (3) interference with the rights or benefits connected with the ownership" or rental of property. *McKenzie v. Fabian*, 2008 WL 5122118, at *4 (D. Minn. Nov. 21, 2008) (citing *Daniels v. Dillard's, Inc.*, 373 F.3d at 887); *Green v. Ramsey*, No. 14-cv-4856 (SRN/LIB), 2015 WL 5672990, at *7 (D. Minn. Sept. 24, 2015) (explaining that § 1982 prohibits racial discrimination with respect to the "right to purchase or lease property," and is "applicable to commercial real estate"). Though these authorities often focus on real property, the statute's protections plainly extend to "personal property" rights as well.[4] 42 U.S.C. § 1982 (". . . and personal property").

Both sections 1981 and 1982 require a showing of a defendant's discriminatory intent, which requires a focus on the conduct of each of the individual Defendants as

---

[4] Courts appear to disagree about whether "personal property" under § 1982 includes contract rights. *See Hunter v. Am. Gen. Life and Accident Ins. Co.*, 375 F. Supp. 2d 442, 445, n.3 (D.S.C. 2005) (stating that the "majority view is that Section 1982 does not apply to contract rights"). Section 1982 has been applied where a bank has been accused of closing customers' accounts based on their race. *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730 (6th Cir. 2015). Defendants have not argued that the Complaint fails to adequately allege facts implicating "personal property," and the Court assumes without deciding that the Complaint implicates a right to inherit, purchase, lease, sell, hold or convey "personal property" within the meaning of § 1982.

alleged by Mr. Glover. One of the individual Defendants named in the Complaint is Destiny R., but there are no allegations about what conduct she engaged in that interfered with Mr. Glover's protected activity. Even if we were to assume that Mr. Glover's reference to a "Trina R." (Paragraph 10 of the Complaint) was meant to be about Destiny R., he offers only the conclusory assertion that, when he raised a complaint to this individual during a call about not receiving a debit card and being turned down for a credit card, the experience involved "bias." There is nothing more, and the Court need not take such a conclusory assertion of discriminatory intent as true. The Complaint fails to state a § 1981 or § 1982 claim as to Destiny R.

Similarly, the Complaint fails to state a § 1981 or § 1982 claim concerning Defendant Amber H. Mr. Glover alleges that he made a complaint to Amber H. about the treatment he was subjected to by a teller in the drive-through at the Roseville branch, but he does not allege that Amber H. engaged in any discriminatory conduct herself, nor that she discriminated against him in the making or enforcement of any contract. Consequently, there is no plausible claim against Amber H. under either statute.

The Complaint asserts that Defendants Brittany and Ajzhanb hung up the phone on Mr. Glover when he called to make a complaint in January 2021, and that Defendant Maria, a teller at the Roseville branch, refused to put the name of a vendor on a money order for him in December 2021. However, the Complaint does not assert any facts that support a plausible inference that these Defendants' behavior involved intentional racial discrimination. Instead, the Complaint offers only conclusory statements to that effect, while it attributes racially charged language to others, not these individuals. Accordingly,

11

there are no facts from which to draw inferences of discriminatory intent in Mr. Glover's favor as to these Defendants, and his § 1981 and § 1982 claims against them are dismissed.

As for Ms. Lawson, Mr. Glover alleges that she lied to him about the return of a debit card and terminated a call in which he intended to complain about the conduct of other Wells Fargo personnel, including Brittany, Jack, and Ajzhanb. The Complaint suggests that Ms. Lawson engaged in this conduct because Mr. Glover was complaining about Wells Fargo's "white worker[s]," but there are no allegations of fact to support an inference that Ms. Lawson had a discriminatory intent, only speculation. The Complaint does not allege, for example, that Ms. Lawson is the one who told him "they are part of Wells Fargo [and] you is black." [Doc. 1 ¶ 11.B]. Nor are there allegations that would suggest Ms. Lawson was aware of the race of any of the individuals about whose conduct Mr. Glover was raising concerns.

Simply stated, the allegations of discriminatory conduct by these individual Defendants are too conclusory and fall short of those where courts have found claims on comparable fact patterns to be plausible. *See, e.g.*, *Maystrenko v. Wells Fargo, N.A.*, Case No. 21-cv-00133-JD, 2021 WL 5232221, at *1, *3 (N.D. Cal. Nov. 10, 2021) (plaintiffs sufficiently alleged that the bank had denied their credit card applications based on alienage in violation of § 1981 pursuant to bank policies, identified specifically in the complaint, to exclude non-citizens from banking services and identified supporting facts in connection with the bank's credit denials); *El-Hallani*, 624 F. App'x at 735–37 (finding allegations that bank systematically closed accounts of Arab and Middle-Eastern individuals sufficient to state a § 1982 claim).

**15 U.S.C. § 1691 –** *Equal Credit Opportunity Act*

Finally, the Court turns to the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691. Under the ECOA "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race." *Id.* § 1691(a)(1). "A 'creditor' is defined in the ECOA as 'any person who regularly extends, renews, or continues credit,' including any person who 'arranges for' or 'participates' in such credit decisions." *Johnson v. Perdue*, 862 F.3d 712, 717 (8th Cir. 2017) (quoting 15 U.S.C. § 1691a(e)). The statute applies to those applying for "credit," which "means the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

None of the allegations in the Complaint suggest that the individual Defendants qualifies as a "creditor" or that any of their complained of conduct involved a "credit transaction" within the meaning of the ECOA. The Complaint describes Mr. Glover's efforts to raise complaints to Amber H. regarding discriminatory treatment at the Roseville branch drive through by a teller, but there is nothing tying that racially motivated treatment to any credit transaction. Mr. Glover's alleged interaction with Brittany and Ajzhanb involved his attempts to complain about not receiving a debit card, and his alleged interaction with Maria involved a money order, but there are no allegations relating to any aspect of a credit transaction involving those individual Defendants. And finally, Ms. Lawson's alleged conduct involved lies concerning the return of a debit card, not a

credit card or other aspect of a credit transaction. For these reasons, the Court concludes that the Complaint fails to state any ECOA claim against the individual Defendants.

## III. Order

Based on the discussion above, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss [Doc. 27] is **GRANTED**. All claims against the individual Defendants Karen Lawson, Amber H., Destiny R., Brittany, Ajzhanb, and Maria are **DISMISSED WITH PREJUDICE**. Further, all of Plaintiff's claims under 28 U.S.C. § 1331, 42 U.S.C. § 1988, and Minn. Stat. § 363A.12, subd. 1, are **DISMISSED WITH PREJUDICE**.

Date: January 18, 2023

                                                  *s/Katherine Menendez*
                                                  Katherine Menendez
                                                  United States District Judge