UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Wilbert Glover, | No. 22-cv-1459 (KMM/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| Wells Fargo Bank, | |
| Defendant. | |

The Plaintiff, Wilbert Glover, brought this case pro se against Defendant Wells Fargo Bank and several individual Wells Fargo employees. Generally speaking, Mr. Glover claims that he was denied equal credit opportunities based on his race in violation of both federal and state law. The Defendants filed a partial motion to dismiss, and in an Order dated January 18, 2023, the Court dismissed all claims against the individual Defendants. Order (Jan. 18, 2023), Doc. No. 48. In addition, the Court dismissed all of Glover's claims under 28 U.S.C. § 1331, 42 U.S.C. § 1988, and Minn. Stat. § 363A.12, subd. 1. As a result, what is left of this case are Mr. Glover's claims against Wells Fargo under 42 U.S.C. § 1981, 42 U.S.C. § 1982, and 15 U.S.C. § 1691.

Wells Fargo now moves for summary judgment on Mr. Glover's remaining claims under Federal Rule of Civil Procedure 56. Alternatively, Wells Fargo argues that Glover's claims should be dismissed with prejudice pursuant to Rule 41(b) and the Court's inherent power because he has failed to prosecute this action and abused the judicial process. Wells Fargo served its motion and supporting documents on Mr. Glover by mail on February 16,

2024. Glover's response to the motion was due on March 8, 2024. D. Minn. LR 7.1(c)(2) (providing a 21-day response deadline for dispositive motions). He failed to respond to the motion by the March 8th deadline and, as of the date of this Order, he has not submitted an opposition. For the reasons that follow, Wells Fargo's motion for summary judgment is granted.

## BACKGROUND

**I.     The Allegations in the Complaint**

In his Complaint, Mr. Glover alleges that he applied for Wells Fargo credit cards in August 2019 and July 2020, but both requests were denied. Compl. ¶ 7, Doc. No. 1. On August 18, 2020, Mr. Glover applied for an auto loan with a credit score of 690, but his application was denied. *Id.* ¶ 8. Because Mr. Glover believed that a person of any race with a credit score over 600 would be approved for an auto loan, he attempted to contact Wells Fargo. However, no one "answer[ed] cause of race a black man asking for a loan." *Id.*

On November 27, 2020, Mr. Glover alleges that he "was denied customer services due to my race." *Id.* An unidentified "bank teller" called him "a Black boy," "stated you people," and "stated she do not respect Black people and don't believe nothing a Black man say." *Id.* Mr. Glover asked to speak to a manager, but the bank teller refused to connect him. *Id.*

In January 2021, Mr. Glover complained to customer service about not receiving a debit card. *Id.* ¶ 9. When he called, he spoke to a Wells Fargo employee named Brittany, but he says "she refuse[d] to take [his] complaint." *Id.* Then, Mr. Glover talked to an individual named Ajzhanb, who like Brittany, is in Wells Fargo's "Enterprise Complaint

2

Management Office." *Id.* Mr. Glover asked to speak to a supervisor, but "both of them terminate[d] the call." Mr. Glover claims that he was "denied public service cause [he is a] Black man." *Id.*

In February 2021, Mr. Glover alleges that he raised another complaint to Wells Fargo when he received a notification that he would be charged a $15.00 monthly service fee for failure to meet a $1,000.00 minimum balance on his account. *Id.* At the time, Mr. Glover's balance was over $2,373.00, and Wells Fargo continued taking out the monthly service fee. *Id.* Mr. Glover asserts that this was due to "deliberate indifference base of race." *Id.*

Mr. Glover asserts that he contacted Wells Fargo again in March 2021, but he had another unpleasant experience. *Id.* ¶ 10. He spoke to someone named Jack to make a complaint about how Brittany and Ajzhanb had treated him, but Jack allegedly refused to help him. According to the Complaint, Jack "stated all Black people [are] wrong and [he] is not going to make a complaint on [a] coworker for [any] Black person," and then hung up the phone. *Id.*

In June 2021, Mr. Glover complained again that he still had not received a debit card. *Id.* He spoke to someone identified as "Trina R." and also raised the issue of having been turned down for a credit card. *Id.* Mr. Glover asserts that this too was due to racial bias. *Id.* In August 2021, after having been denied a request for a home mortgage loan, Mr. Glover allegedly contacted Wells Fargo looking to speak with someone about the denial. *Id.* He states that he was told that there was no one there to talk to him. *Id.*

On December 13, 2021, Mr. Glover asserts that he contacted Wells Fargo to make a complaint and spoke to Wells Fargo employee Amber H. On the call, Mr. Glover alleges he raised the issue of the refusal to send him a debit card and an experience he had with a teller at the Roseville, Minnesota, branch. *Id.* ¶ 11. Mr. Glover asserts that at the Roseville location, "the white lady teller in the drive through refuse[d] to provide customer services" to him, despite the fact that no other customer was in line behind him. *Id.* The teller allegedly "waved her hand . . . and 'said stated' bye, bye blackie not in this drive through at Roseville branch." *Id.* Mr. Glover asserts that he went inside the Roseville branch and made a complaint about the teller's behavior to the supervisor, but the supervisor did nothing other than refuse to give Mr. Glover her name. *Id.* Later that day, Mr. Glover spoke with a Wells Fargo employee named Maria, who works as a teller, to tell her that his debit card did not work. *Id.* ¶ 11.B. Maria allegedly refused to put the name of a vendor on a money order for Mr. Glover even though he had his driver's license and the non-functioning debit card in hand. *Id.*

On January 11, 2022, Mr. Glover alleges that Karen Lawson, who is alleged to be a Wells Fargo "Executive Office Specialis[t]," "lied and said the debit card [he requested] was returned to them [be]cause the address was incorrect." *Id.* Although Mr. Glover intended to lodge a complaint about treatment he had received from Brittany, Jack, and Ajzhand, Ms. Lawson allegedly terminated the call because he is Black. And when Mr. Glover attempted to call back "a number of times, [he] kept getting [the] phone call terminate[d] cause this is [a] complaint against white worker[s] from [a] Black man." *Id.*

4

## II. Evidentiary Record

During the course of this litigation, Mr. Glover neither served Wells Fargo with any written discovery requests nor sought to depose any witnesses. Smith Decl. ¶ 2, Doc. No. 75.

With respect to Mr. Glover's allegations that he was denied a credit card application in August 2019 based on his race, he produced an August 23, 2019 letter from Wells Fargo that explains his credit application was denied due to concerns over delinquency, high debt to credit ratio, and insufficient payment history. Doc. No. 40-1 at 2. Similarly, Glover produced a letter regarding Wells Fargo's alleged discriminatory July 2020 denial of a credit application which states that he was not extended credit because Wells Fargo's review of his Experian credit report indicated delinquency, excessive inquiries within the preceding twelve months, and insufficient or negative payment history. Doc. No. 56-1 at 4. Jonathan Gillespie, a Wells Fargo Business Execution Consultant, reviewed Mr. Glover's customer file, including his credit applications, and confirmed that the reasons stated in these denial letters were the reasons that Mr. Glover's credit applications were not approved. Gillespie Decl. ¶¶ 3–5, Doc. No. 74. According to Gillespie, "[r]ace had nothing to do with the denials." *Id.* ¶ 5.

Regarding Mr. Glover's allegations that he was denied an auto loan in August 2020, he produced a letter received from Wells Fargo. Doc. No. 40-1 at 3. That letter states that his loan application was denied based on his credit score, the number of inquiries in his file, and overuse of debt. *Id.* Further, Wells Fargo explained that it understood his credit score was 590 on August 8, 2020. *Id.* Gillespie again states that race was not a factor in this

5

denial. Gillespie Decl. ¶ 6. Instead, Wells Fargo's denials were consistent with its practices and policies and were based on "insufficient credit score, excessive inquiries in his credit file, and excessive debt utilization, based on Wells Fargo's reading of Plaintiff's credit report." *Id.* ¶ 6.

Mr. Glover also produced documents relating to his assertions that a bank teller used racist language and improperly handled a transaction with him on November 27, 2020. A letter dated January 5, 2021 from Wells Fargo states that:

> Research confirmed the first transaction was completed for $800.00 money order and then $80.00 cash. When it was stated that the transaction was incorrect, the banker updated the money order. The corrected money order was made for $750.00 . . . and then cash withdrawal of $80.00, for a total withdraw amount of $830.00 on November 27, 2020.
> . . . .
> The original error regarding the money order and cash amounts were based solely on a misunderstanding by the branch team member who was assisting you and who corrected the mistake, this was not based on any personal trait or characteristic.

Doc. No. 56-1 at 3; *see also* Gillespie Decl. ¶ 7 (indicating that the January 5, 2021 letter "accurately reflect[s] the facts stated therein, including but not limited to the fact of a correction of a transaction").

Wells Fargo also points to evidence concerning Mr. Glover's allegations that he was never sent a debit card after he applied for one, despite speaking with Wells Fargo personnel in January, March, June, and December of 2021. Gillespie Decl. ¶ 8. Wells Fargo sent Mr. Glover a replacement debit card on December 15, 2021. *Id.* Glover produced a copy of a letter sent by Wells Fargo to him confirming that his replacement debit card was mailed

to him. *Id.*; Doc. No. 56-1 at 4 ("Our research is not showing a debit card was ordered in November 2020. We do show a debit card was ordered and sent on December 15, 2021.").

Mr. Glover also produced documents related to his allegation that, because of his race, he was charged a monthly service fee of $15.00 even though he had a balance exceeding the minimum required balance to avoid such a fee. Doc. No. 56-1 at 5. This includes a statement of Mr. Glover's account from December 15, 2021, which includes a notice that the service fee could be avoided if Glover fulfilled "any **ONE** of the following account requirements": (1) a minimum total amount of $1,000 in qualifying direct deposits; (2) one linked Wells Fargo home mortgage; or (3) a combined balance of $10,000 in linked accounts. *Id.* At the time Glover's account was charged the $15.00 fee, his account balance was more than $7,600 below the required minimum balance. Gillespie Decl. ¶ 10. Mr. Glover did not have a Wells Fargo home mortgage. *Id.* ¶ 11. His checking account did not have a minimum of $1,000 in qualifying direct deposits for the month reflected in that bank statement. *Id.* ¶ 12.

## DISCUSSION

In support of its motion for summary judgment, Wells Fargo raises three main arguments. First, Wells Fargo argues that it is entitled to judgment in its favor on all of Glover's claims because he has presented no direct evidence of discrimination. Second, Wells Fargo contends that the Court should grant its motion because Plaintiff cannot create an inference of unlawful discrimination under the *McDonnell Douglas* burden-shifting framework. Finally, Wells Fargo asserts that the Court should dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 41(b) and under its inherent power

7

as a sanction for Plaintiff's failure to prosecute and for his abuses of the judicial process. While the Court agrees that Glover has failed to prosecute and engaged in abusive litigation tactics, because the Court finds that Wells Fargo is entitled to summary judgment on the merits, it grants the motion on that basis and does not decide whether the action should be dismissed on these alternative grounds.

I.      **Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Dowden v. Cornerstone Nat'l Ins. Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party must demonstrate that the material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Id.* at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199 (8th Cir. 2021). "Credibility determinations, the weighing of the

8

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ." *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255).

## II.     Analysis

### A.  Merits

"Even when a defendant's motion for summary judgment is not opposed by the plaintiff, a district court must satisfy itself that, on the record before it, there are no genuine issues of material fact as to at least one of the necessary elements of plaintiff's case." *Noland v. Com. Mortg. Corp.*, 122 F.3d 551, 553 (8th Cir. 1997).

This case involves claims that Wells Fargo violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a)(1), which prohibits discrimination on the basis of race in connection with any aspect of a credit transaction, *et seq.*; 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of contracts; and 42 U.S.C. § 1982, which prohibits interference with property rights on the basis of race. Each of these statutory claims requires a plaintiff to demonstrate that the defendant acted with discriminatory intent.

A plaintiff may establish a violation of the ECOA by presenting direct evidence of discrimination by the defendant, which may include "statements by persons involved in making the [credit] decision that directly manifests a discriminatory attitude." *Dismuke v. Connor*, No. 05-cv-1003, 2007 WL 4463567, at *4 (W.D. Ark. Dec. 14, 2007) (referring to Eighth Circuit employment-discrimination law regarding direct evidence). To prove that a defendant violated the ECOA in the absence of direct evidence, a plaintiff must show that

"(1) [he] was a member of a protected class, (2) [he] applied for and was qualified for a loan with the Bank, (3) the loan was rejected despite [his] qualifications, and (4) the Bank continued to approve loans for applicants with similar qualifications." *Rowe v. Union Planters Bank of Southeast Mo.*, 289 F.3d 533, 535 (8th Cir. 2002); *see also Torgerson v. Wells Fargo Bank S. Dakota, N.S.*, No. 05-cv-1050, 2009 WL 255995, at *8 (D.S.D. Feb. 3, 2009) (explaining that the *Rowe* elements mirror the *McDonnell Douglas* burden-shifting framework developed in the employment context).

"A plaintiff establishes a prima facie case under § 1981 by showing (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts)." *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004). "The prima facie elements of a § 1982 case 'parallel those of a § 1981 case and require that a plaintiff show (1) membership in a protected class; (2) discriminatory intent on the part of the defendant; and (3) interference with the rights or benefits connected with ownership of property.'" *Glover v. Tigani*, 666 F. Supp. 3d 896, 901 (D. Minn. 2023) (quoting *Daniels*, 373 F.3d at 887). A plaintiff can establish intentional discrimination necessary to prove a § 1981 or § 1982 claim either with direct evidence or circumstantially, through the *McDonnell Douglas* burden shifting analysis. *Luckey v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019); *Glover*, 666 F. Supp. 3d at 899–900 (analyzing § 1981 claims); *Glover*, 666 F. Supp. 3d at 901 (discussing § 1982 claims).

*Direct Evidence*

In its motion for summary judgment, Wells Fargo has demonstrated that there is no genuine issue of material fact as to at least one of the necessary elements of each statutory claim advanced by Mr. Glover. For example, Glover has produced no direct evidence of discrimination in support of his claims under the ECOA, § 1981, or § 1982. None of the evidence in the record relating to credit denials or the other interactions with Mr. Glover involve statements manifesting a discriminatory attitude. The only statements in the record showing such a discriminatory attitude are found in Mr. Glover's complaint, but these are insufficient for two reasons. First, they are merely allegations in a pleading that cannot defeat a properly supported motion for summary judgment. *FDIC v. Bell,* 106 F.3d 258, 263 (8th Cir. 1997) (providing that arguments or allegations, without more, are insufficient to defeat properly supported summary judgment motion). And second, even if Mr. Glover had presented those allegations of racist comments by Wells Fargo employees through a sworn affidavit or a declaration made under penalty of perjury, none of them were made by persons shown to have been involved in making any decision that could form the basis of his statutory claims. For example, there is no evidence that any of the persons who allegedly made racially charged statements to Mr. Glover had any decision-making authority in connection with an application for credit or the making or enforcement of a contract.

*Burden-Shifting*

Because there is no direct evidence of discrimination, Wells Fargo also argues that it is entitled to summary judgment if Mr. Glover's claims are analyzed under the

11

*McDonnell Douglas* burden shifting framework. Well Fargo acknowledges that Mr. Glover is a member of a protected class and "accepts that denial of a credit card, a debit card, and an auto loan concerns an area enumerated by the statutes that underlie Plaintiff's remaining claims, *i.e.*, 42 U.S.C. § 1981, 42 U.S.C. § 1982, and 15 U.S.C. § 1691." Def.'s Mem. at 14–15. However, Wells Fargo contends that Glover has no evidence to support the prima facie showing that it intended to discriminate against him on the basis of race and he cannot show that Wells Fargo's proffered non-discriminatory reasons for its actions are pretextual. *Id.*

Having reviewed the entire record, the Court finds that Wells Fargo is entitled to summary judgment under a burden-shifting analysis. Mr. Glover has failed to come forward with evidence in response to the motion that would support an inference of intentional discrimination. For his ECOA claim, he has failed to point to evidence that would allow a reasonable jury to conclude that he was qualified for the credit he applied to receive or that Wells Fargo approved credit for applicants with similar qualifications. *Rowe*, 289 F.3d at 535 (8th Cir. 2002). And he has identified no similarly situated comparators that could be used to support his claims under § 1981 and § 1982. "Indeed, he does not make any showing related to similarly-situated [Wells Fargo] customers." *Glover*, 666 F. Supp. 3d at 900 (citing *Luckey*, 912 F.3d at 1087 ("The plaintiff has the burden of locating similarly-situated comparators.")). Accordingly, summary judgment in favor of Wells Fargo is appropriate because Mr. Glover has failed to present evidence sufficient to support his prima facie case on any of his claims.

Moreover, summary judgment is appropriate because Glover has not shown that Wells Fargo's non-discriminatory reasons for its actions are pretext for unlawful discrimination. With respect to the ECOA claims, Wells Fargo has pointed to evidence in the record indicating that there are legitimate, non-discriminatory reasons for each of the credit denials that Glover claimed was based on racial animus. Each was tied to legitimate concerns over creditworthiness such as overutilization of credit, negative payment history, and delinquency. Similarly, Wells Fargo has pointed to evidence showing that there was a non-discriminatory explanation for other events described in Mr. Glover's Complaint. For example, Wells Fargo has shown that there was a simple misunderstanding with a teller concerning the amount of a money-order transaction and that it was not based on race. It has also pointed to evidence indicating that race was not a motivating factor in the alleged failure to send Glover a replacement debit card—indeed the evidence suggests Wells Fargo had no record that a request was made until December 2021, at which point it sent a replacement card to him. With respect to the $15.00 service fee on Mr. Glover's checking account, Wells Fargo has pointed to evidence showing that the fee was not charged for any discriminatory reason. Rather, the fee was charged because Glover did not meet any of the three criteria that were required for the account to avoid the service fee (e.g., qualifying $1,000 in direct deposits, a linked home mortgage account, or a minimum balance of $10,000 in linked accounts).

In failing to respond to the motion for summary judgment, Mr. Glover has not pointed to any evidence that could allow a reasonable jury to infer that any of Wells Fargo's proffered non-discriminatory reasons was pretextual. And of course, the allegations in his

13

Complaint are insufficient to defeat Wells Fargo's properly supported motion for summary judgment.

For these reasons, the Court finds that Wells Fargo is entitled to summary judgment on each of Mr. Glover's claims, and this action will be dismissed with prejudice as a result.

### B. Abusive Litigation

Wells Fargo alternatively argues that this action should be dismissed with prejudice under Federal Rule of Civil Procedure 41(b) and the Court's inherent power because Mr. Glover failed to prosecute the litigation in good faith. Because the Court has found that Wells Fargo is entitled to summary judgment on the merits, it is unnecessary for the Court to resolve these arguments. However, by declining to address these issues the Court in no way intends to condone the way Mr. Glover has pursued this litigation. In particular, the Court notes that Mr. Glover made no effort to obtain discovery from the defendant. Although he represented himself in this case, Mr. Glover is no stranger to federal litigation and is certainly aware that he is entitled to serve discovery requests and knows that obtaining evidence through discovery is an essential part of the civil litigation process, often necessary to obtaining evidence in support of a party's claims.

More concerning still are Mr. Glover's abusive communications toward Wells Fargo's former opposing counsel, Jennell Shannon. In various filings in this case, Mr. Glover has accused Ms. Shannon of making inappropriate comments and engaging in improper conduct based on racial bias. Doc. Nos. 56, 56-1, 59-1, 60-1, 62-1, 63, 63-1, 66. Mr. Glover has asserted that Ms. Shannon refused to meet and confer prior to the deadline for submitting the joint report of the parties' Rule 26(f) conference, that she disregarded

court orders because she is white, and that she was unwilling to talk or engage with Mr. Glover because he is Black. Wells Fargo presented evidence refuting those accusations. As Ms. Shannon explains in her declaration, she conferred with Mr. Glover over the phone on February 24, 2023 prior to submitting what was anticipated to be a Joint 26(f) Report. Shannon Decl. ¶ 2, Doc. No. 73. When discussing the possibility of settlement during that call, she explained that Wells Fargo was not interest in settling the lawsuit at that time, which caused Mr. Glover to become angry and begin yelling on the phone. *Id.* When Ms. Shannon asked him to stop and said she would end the call if he continued, he did not stop, and she ended the call. *Id.* During the call, neither she nor Mr. Glover discussed either judge assigned to the case, *id.* ¶ 3, although Mr. Glover suggested that Shannon told him that the undersigned was "on her side," Doc. No. 59-1. Nor did Ms. Shannon make any comments regarding Mr. Glover's race or the race of any other person, contrary to Mr. Glover's accusations in emails to the Court. Shannon Decl. ¶ 4.

According to Ms. Shannon, the February 24, 2023 call was not the first time she had to end a call due to Mr. Glover's conduct, and he had previously become "agitated, angry, and prone to verbal tirades" when they had spoken on the phone in the past. *Id.* ¶ 6. Ms. Shannon also notes that the emails Mr. Glover sent to United States Magistrate Judge Elizabeth Cowan Wright accusing Shannon of racial bias and abusive conduct are accurate, but incomplete copies of communications with Mr. Glover. *Id.* ¶ 7. These emails are, according to Ms. Shannon, "representative of Plaintiff's abusive communications, both in writing and over the phone, to [her] during [her] work on this matter." *Id.*

These circumstances, and others detailed in Wells Fargo's moving papers, likely support a finding that Mr. Glover has pursued this litigation in bad faith. However, the Court ultimately declines to resolve these issues because the sanction Wells Fargo seeks based on Mr. Glover's litigation approach is dismissal of this action with prejudice. That is the same result that the Court has found appropriate based on an evaluation of the merits on the Defendant's motion for summary judgment.

## ORDER

For all the reasons discussed above, **IT IS HEREBY ORDERED THAT** Defendant's motion for summary judgment, Doc. No. 70, is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE**.

**Let Judgment be entered accordingly**.

Date: June 12, 2024

*s/Katherine Menendez*
Katherine Menendez
United States District Judge